REQUESTED BY: Senator Don Wesely Nebraska State Legislature State Capitol Lincoln, Nebraska 68509
Dear Senator Wesely:
You have asked our opinion as to whether current Nebraska law provides for a guarantee of the employee account value for members of the State Employees Retirement System. We conclude that it does not.
You refer to our letter of July 25, 1983, to the State Investment Officer, in which we concluded that Neb.Rev.Stat. § 84-1310 (Reissue 1981) did not guarantee that the employee accounts would never decrease. You express concern, however, that the amendments to § 84-1310 by LB 313 in the last session of the Legislature might have changed that answer.
Neb.Rev.Stat. § 84-1310 (Supp. 1983) now provides:
 A member's share of the fund arising from the salary deductions made in accordance with the provisions of section 84-1308 shall be known as his or her employee account. Each year commencing January 1, 1975, regular interest shall be credited to the employee account. As of January 1 of each year, a member's employee account shall be equal to one hundred per cent of his or her employee account as of the next preceding January 1, increased by any regular interest earned and any amounts deducted from the member's salary since the next preceding January 1 in accordance with the provisions of section 84-1308.
As you point out, the statute, in stating that the member's employee account shall be equal to one hundred percent of his or her employee account as of the preceding January, increased by interest earned and contributions, seems to contemplate that it shall not diminish. It appears that the Legislature may have contemplated that, and not taken into account the possibility that the account would decrease in value, but we find nothing in the act which would remedy the situation, should a loss occur.
Neb.Rev.Stat. § 84-1308 (Reissue 1981) provides that the funds deducted from employee salaries shall be paid to the State Investment Officer. He is charged with the responsibility of investing them. To date, at least, he has executed this responsibility by turning them over to a primary carrier. However, whether he entrusts the funds to a primary carrier, or invests them in some other fashion, there is always the possibility of a loss. The question is whether § 84-1310 provides that the state will make up any such loss by appropriation from the General Fund.
An examination of the entire act furnishes no basis for concluding that the Legislature had any such intention. We would certainly not infer such an important provision in the absence of unequivocal statutory language. We have examined the committee hearing and the floor debate on LB 313, and find absolutely nothing which indicates such an intention.
The Director of the Retirement Systems testified at the committee hearing, and said that the purpose of the bill was to make technical corrections to clarify current law. Senator Fowler, discussing the bill on the floor, said that all the bill did was to bring the statute into conformity with policy changes adopted two years previously, and that it had no fiscal impact. This would hardly be consistent with a change so fundamental as having the Legislature undertake to appropriate funds to make up any losses suffered by the investment of the employee accounts by the State Investment Officer, or by the insolvency of the primary carrier.
We therefore conclude that the Legislature, in using the language you refer to in § 84-1310, simply did not take into account the possibility of a loss incurred by the employee accounts. It did not intend to guarantee them.
Very truly yours, PAUL L. DOUGLAS Attorney General Ralph H. Gillan Assistant Attorney General